The Honorable Paul R. Bosson Prosecuting Attorney 18th Judicial District East 501 Ouachita Avenue Hot Springs, Arkansas 71901
Dear Mr. Bosson:
This is in response to your request for an opinion on nine questions regarding the possible dissolution of a suburban improvement district. Your questions will be set out and answered in order below.
Your first question is as follows:
 1. What is the criteria to dissolve a previously formed and operating suburban improvement district?
The procedure for such dissolution is set out at A.C.A. § 14-92-237
(Supp. 1997). I have enclosed a copy of that statute for your review, but essentially it provides that districts created pursuant to that subchapter may be dissolved in the same manner in which they were created. A.C.A. § 14-92-237(b).[1] Typically, this involves a petition process and an order of the county court.[2] If any bonds or other indebtedness are outstanding, however, the assessed benefits being levied at the time of dissolution shall continue to be levied and collected until the debt is paid. A.C.A. § 14-92-237(b) (Supp. 1997).
Your second question is as follows:
 2. Assuming the suburban improvement district is dissolved, what happens to the existing expenses, fees, `let' (executed construction contracts) and already funded or paid expenses of the district?
As noted above, the law provides that all existing indebtedness of the district must be paid. A.C.A. § 14-92-237(b). A procedure is provided for the conversion of all assets of the district into cash, the payment of all indebtedness, and a pro rata refund to the property owners. A.C.A. §14-92-237(c). The procedure may or may not be available immediately upon dissolution, depending upon the status of the project, the cash on hand, the bond issue, and any applicable trust indenture securing the bonds. Private bond counsel should be consulted in this regard. If there is not enough cash to pay the existing indebtedness and bonds, or if the trust indenture prohibits the early repayment of the bonds, the assessments must continue to be levied. A.C.A. § 14-92-237(b).
Your third question is as follows:
 3. Assuming the suburban improvement district is dissolved, what happens to the bonds for the district that have already been sold, some expenses for the bond issue have been paid, and other expenses are outstanding?
Again, the relevant subchapter provides that the assessments shall continue to be levied until the bonds and indebtedness of the district have been paid. I have not been provided with any facts, however, as to the status of the project or improvements undertaken by the particular suburban improvement district at issue. It is possible that if bonds have been issued and the project or projects have not been constructed or completed, the applicable trust indenture securing the bonds may provide a procedure to be followed. The private bond counsel should be consulted in this regard.
Your fourth question is as follows:
4. If dissolution occurs, who pays for #2 and #3 above?
Again, assuming no procedure is provided in the trust indenture regarding this circumstance, and/or the cash on hand is insufficient to pay all expenses, the assessments continue to be levied until all indebtedness is paid.
Your fifth question is as follows:
 5. Are these expenses to be paid by continuing to levy the assessments already in place?
The answer to this question is "yes," pursuant to the above, absent some settlement or procedure authorized by the trust indenture.
Your sixth question is as follows:
 6. Do any of the suburban improvement district commissioners have any liability or personal responsibility for the expenses in # 2 and # 3?
The answer to this question is "no," absent corrupt or malicious intent on the part of a commissioner. See A.C.A. § 14-92-207(c) (1987).
Your seventh question is as follows:
 7. Do any of the attorneys, assessors, bond attorneys, or other employees associated with the suburban improvement district have any personal liability or responsibility for such expenses in # 2 and # 3?
I cannot answer this broad question without reference to all the facts and circumstances. It is possible that some of the persons above would be entitled to immunity from liability for certain actions, but I cannot attempt to answer such a question without reference to all the facts, pertinent contracts and documents at issue.
Your eighth question is as follows:
 8. Who must defend possible lawsuits brought by contractors, suppliers, and other persons who allege breach of contract as a result of the dissolution of a district?
Again, all "debts" of the district are to be paid. Provision is made for payment of legal expenses in connection with the dissolution. A.C.A. §14-92-237(c)(1). Presumably, therefore, the district's legal counsel will be responsible for defending the district in such suits.
Your ninth and final question is as follows:
 9. What recourse do the property owners of the dissolved suburban improvement district have against those parties who requested dissolution and thus an assessment is required to be paid by all property owners without any benefit to them?
Again, I have not been provided with any facts as to the status of the improvements for which this particular suburban improvement district was created. The property owners you mention, however, are entitled, after all the bonds and indebtedness are paid, to a pro rata distribution of the surplus funds remaining. A.C.A. § 14-92-237(c)(2). Section14-92-237(c)(1) provides for the conversion of all assets into cash, the payment of all existing expenses and debts of the district, and for the surplus to be refunded to property owners. You have noted that some bonds have been issued, however, and the law provides that this indebtedness must be satisfied. The applicable trust indenture governing the payment of the bonds may provide a procedure for the early redemption or payment of the bonds under circumstances where the project is not completed. Private bond counsel should be consulted on this point.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] This provision, which was enacted by Act 510 of 1981, applies only to districts created after its enactment. That is, it does not apply to districts in existence on the effective date of that act. See Acts1981, No. 510, § 9. It is my understanding that the district in question herein was created after that date.
[2] Act 150 of 1963 provides a procedure to dissolve such a district upon unanimous vote of the commissioners. It appears, however, that this provision applies only where "title and control of the facilities . . . have been taken over or assumed by any political subdivision, municipal utility commission or agency, or any regulated public utility. . . ."See A.C.A. § 14-92-237(a)(1).